IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL SEMIAN,  :  Plaintiff  : | |
| : | No. 3:17-CV-1183 |
| v.  : | |
| : | Judge Mariani |
| DEPARTMENT OF MILITARY  : AND VETERANS' AFFAIRS –  : GINO J. MERLI VETERANS  : CENTER,  : Defendants  : | Electronically Filed Document  Complaint Filed 07/05/17 |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

The Pennsylvania Department of Military and Veterans Affairs (the "Department"), by its attorneys, has moved pursuant to Fed. R. Civ. P. 12(b)(6) for dismissal of the complaint against it. Doc. 12. This brief is filed in support of that Motion.

**I.  STATEMENT OF THE CASE**

Plaintiff Michael Semian filed his complaint July 5, 2017. Doc. 1. In it, Semian alleges a host of claims related to his termination from his position as the Commandant of the Gino J. Merli Veterans Center (the "Merli Center"), including: 1) claims of discrimination based on sexual orientation under Title VII and the Pennsylvania Human Relations Act ("PHRA"); 2) a claim of discrimination under 42 U.S.C. §1981; 3) a claim for tortious interference under state law; and 4) a

Whistleblower claim under state law.

Mr. Semian's claims should be dismissed for the following reasons: 1) Mr. Semian has failed to show he was discriminated against because of his sex; 2) he has not received a required "right to sue letter" from the EEOC; 3) his §1981 claim does not relate to race discrimination; 4) his state law tortious interference claim is barred by sovereign immunity; and 5) his Whistleblower claim is time barred. For these reason's Mr. Semian's Complaint should be dismissed in its entirety.

## II. FACTS

For purposes of this Motion only, the Department accepts the allegations set forth in Mr. Semian's complaint as true. Specifically:

Mr. Semian was the Commandant of the Merli Center from June, 2010 until October, 2015, and is a gay male. Compl.[1], ¶¶1, 2. The Department was established by the Pennsylvania Legislature to administer the healthcare system for veterans in the Commonwealth. *Id.*, ¶15. The Department, through the Merli Center, provides a broad spectrum of personal care, skilled nursing care, domiciliary car, and dementia care for eligible veterans. *Id.*, ¶17.

The Pennsylvania Department of Health (the "DOH") conducts inspections (or "surveys") and ratings of veterans' homes throughout the Commonwealth. *Id.*, ¶¶64, 65. These surveys are conducted to ensure that the facilities are following

---

[1] "Compl." refers to the Complaint filed by Mr. Semian in this matter. Doc. 1.

state and federal rules and regulations. *Id.* Ten surveys were conducted of the Merli Center in in 2014, and seven in 2015. *Id.,* ¶¶72, 73.

During a 2013 survey of the Merli Center, it was revealed that the infection control and wound nurse at the center was unable to perform the duties of the position. *Id.*, ¶66. That nurse was replaced by the Department, but the new infection control and wound nurse lacked formal training and experience for the position and, therefore, Mr. Semian questioned this appointment. *Id.*, ¶67. Following the appointment of the new infection control and wound nurse, the Merli Center continued to be cited for issues involving infection control and wounds, and Mr. Semian continuously complained to his superiors that a competent and effective Director of Nursing and infection control and wound nurse was critical to the health care needs of the residents of the Merli Center. *Id.*, ¶¶68, 71.

A survey completed by DOH in September, 2015 found that the Merli Center was not in compliance with regulations in several areas, including infection disease and wound care. *Id.*, ¶78. In 2015, the Director of Homes directed Mr. Semian to no longer have the Certified Registered Nurse Practitioner for the Merli Center attend meetings with DOH surveyors, and Mr. Semian objected to this directive. *Id.*, ¶56. On October 25, 2015, Semian was separated from his employment with the Department at the Merli Center. *Id.*, ¶84.

In December, 2015, the Merli Center's license was lowered to a provisional four license, the lowest of all DOH licenses. *Id.*, ¶61. On January 31, 2017, Mr. Semian received a right to sue letter from the Pennsylvania Human Relations Commission (the "PHRC").[2] *Id.*, Exh. A. On July 5, 2017, Mr. Semian filed his Complaint in this matter.

## III. QUESTIONS PRESENTED

1) **Has the plaintiff failed to plead sufficient facts to establish a claim for sex discrimination under Title VII and the PHRA because he has failed to state a claim on the basis of gender?**

2) **Is plaintiff's Title VII claim barred because he did not receive the required right to sue letter from the EEOC?**

3) **Does plaintiff's §1981 claim fail because he has not brought a claim for race discrimination, as is required under that statute?**

4) **Is plaintiff's claim for tortious interference barred by sovereign immunity because that doctrine protects the Commonwealth from suit for money damages by private parties based on state law claims?**

5) **Is plaintiff's Whistleblower claim time barred because the statute of limitations for a Whistleblower claim is 180 days under 43 P.S. §1424(a), and Mr. Semian waited over 500 days to file his claim?**

## IV. ARGUMENT

**A. Standard under FRCP 12(b).**

Following the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), plaintiffs are

---

[2] Mr. Semian has not received a right to sue letter from the EEOC, which is required here.

required to allege facts sufficient to "raise a right to relief above the speculative level". *Twombly*, 550 U.S.at 555. Those cases counsel the court to conduct a three-part analysis.

First, the factual and legal elements of a claim should be separated. *Iqbal,* 556 U.S. at 679. While the court must accept all well-pleaded facts as true, legal conclusions may be disregarded. *Id*. Second, the court should "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth'" and "disregard[] [those] conclusory assertions." *Palakovic v. Wetzel*, 854 F.3d 209, 219–20 (3d Cir. 2017) *citing Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). Third, the court must determine whether the well-pleaded facts, alone, facts are sufficient to demonstrate a "plausible claim for relief." *Id.* In other words, a complaint must do more than just allege a plaintiff's entitlement to relief; it must "show" such an entitlement with its facts. *Palakovic,* 854 F.3d at 219-20 (citing *Burtch*, 662 F.3d at 221 ("To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must: "First, ... 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, ... identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' ")); s*ee also Phillips v. County of Allegheny,* 515 F.3d 224, 234-35 (3d

Cir. 2008). As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679. In that case, the motion should be granted, and the case should be dismissed. This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### B. Mr. Semian's Title VII and PHRA claims should be dismissed because he failed to properly plead a claim for sex discrimination.

Mr. Semian claims that the Department violated both Title VII and the PHRA by discriminating against him on the basis of his sexual orientation. Discrimination claims brought under Title VII and the PHRA are analyzed under the same standards. *Simpson v. Kay Jewelers*, 142 F.3d 639, 643-44, n.4 (3d Cir.1998); *Fairfield Township Volunteer Fire Co. 1 v. Commonwealth*, 609 A.2d 804, 805 (Pa. 1992). So a determination that a plaintiff failed to demonstrate a *prima facie* case of discrimination under Title VII is also dispositive of the plaintiff's claims under the PHRA. *Zezulewicz v. Port. Auth. of Allegheny County*, 290 F.Supp.2d 583, 601 (W.D. Pa. 2003)

Title VII of the 1964 Civil Rights Act provides that, "it shall be an unlawful employment practice…to discriminate against any individual…because of…sex." 42 U.S.C. §2000e-2(a)(1). In *Prowel v. Wise Business Forms, Inc.*, 579 F.3d 285

6

(3d Cir. 2009), the Third Circuit made clear that, regardless of one's sexual orientation, a claim for "sex discrimination" may be brought under Title VII—so long as the plaintiff alleges, and ultimately proves, that the harassment or discrimination was because of the plaintiff's sex. *Prowel*, 579 F.3d at 289 ("[w]hatever the sexual orientation of a plaintiff bringing a same-sex sexual harassment claim, that plaintiff is required to demonstrate that the harassment was directed at him or her because of his or her sex") (further quotations omitted).

Since *Prowel*, the Third Circuit has identified several situations where same-sex harassment may also constitute gender discrimination; but it has made clear that claims of discrimination on the basis of sexual orientation, alone, are insufficient to state a claim under Title VII. *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 260, 262 (3d Cir. 2001). Successful Title VII claims may exist, for example, where: 1) there is "evidence that the harasser sexually desires the victim"; 2) the harasser "displays hostility to the presence of a particular sex in the workplace"; or 3) the harasser's conduct was "motivated by a belief that the victim did not conform to the stereotypes of his or her gender." *Id*. at 262-263. *See also Prowel*.

Here, Mr. Semian alleges only that he was discriminated against because of his sexual orientation, and that he was treated differently than similarly situated

heterosexuals. Compl., ¶¶85, 87-91.[3]  But Mr. Semian has made no allegations, for example, that: he was harassed by a supervisor or co-worker who had romantic or sexual desires; there was hostility in the workplace towards his sex; he was discriminated against because he failed to conform to stereotypes of his gender; or any other conduct that might be actionable under *Prowel*.  Under the law, Mr. Semian's claims are simply insufficient to establish sex discrimination. Accordingly, his Title VII and PHRA claims should be dismissed.[4]

### C. Mr. Semian's Title VII claim is barred because he has not received a required right to sue letter from the EEOC, and it is too late now.

Mr. Semian's Title VII claim also fails because he has not received a right to sue letter from the EEOC, and it is too late now.  It is blackletter law that "a plaintiff must file charges with the EEOC and receive a right to sue letter before

---

[3] Further, Mr. Semian does not identify any person on which on which his comparative claims under Title VII or PHRA claim might be based and, since he was the Commandant, it is unlikely he will be able to identify such a "similarly situated" person. *See*, *e.g.*, *Collins v. Kimberly-Clark Pennsylvania, LLC*, 247 F. Supp. 3d 571, 589-90 (E.D. Pa. 2017) (collecting cases) (plaintiff must "demonstrate that similarly-situated persons outside the protected class were treated more favorably" and that "similarly-situated" means being "similar in 'all relevant respects'").

[4] Plaintiff has also failed to plead, with any specificity, that he was discriminated against because of his sex.  Mr. Semian does not plead that anyone knew about his sexual orientation; he only alleges that he was fired "in part" on the basis of his sexual orientation, and he does so only on information and belief. The only basis provided for his allegations are legal conclusions (Compl., ¶¶85-92), which are insufficient to survive a motion under FRCP 12(b)(6). The Court should "disregard[] [those] conclusory assertions." *Palakovic v. Wetzel*, 854 F.3d at 219–20.

[he or she] may file a Title VII suit." *Queen v. U.S. Sec. Assocs.,* No. CIV.A. 09-1770, 2010 WL 547525, at *3 (E.D. Pa. Feb. 9, 2010) (citing *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 399 (3d Cir.1976)). Further, any charge under Title VII first "must be filed with the EEOC within 300 days of when the alleged unlawful employment practice occurred. *Seredinski v. Clifton Precision Prod. Co., Div., of Litton Sys.,* 776 F.2d 56, 61 (3d Cir. 1985); *see also* 42 U.S.C. § 2000e–5(e). And, then, the "ensuing suit is limited to claims that are within the scope of the initial administrative charge." *Twillie v. Erie Sch. Dist.,* 575 F. App'x 28, 30–31 (3d Cir.2014). (citing *Antol v. Perry,* 82 F.3d 1291, 1295–96 (3d Cir.1996)). These procedures "evince a preference for settling matters through administrative conciliation over formal court proceedings." *Queen,* No. CIV.A. 09-1770, 2010 WL 547525, at *3 (citing *Ostapowicz,* 541 F.2d 394, 399).

While Mr. Semian attaches to his Complaint a right to sue letter *from the PHRC*, he does not attach one from the EEOC. Mr. Semian's PHRC letter is insufficient here; in order to file a claim under Title VII, a plaintiff must first have filed a claim with the EEOC and received a right to sue letter from them. *Id.*

Further, while the complaint indicates that a charge was filed with the EEOC, it does not allege that is was done so in a timely fashion. *See* Compl., ¶27. Such a claim "must be filed with the EEOC within 300 days" of the behavior complained of. *Seredinski,* 776 F.2d 56, 61; 42 U.S.C. § 2000e–5(e). Here, the

conduct that Mr. Semian alleges took place more than 24 months ago. Compl., ¶85.

For these reasons, Mr. Semian's Title VII claim should be dismissed.

### D. Mr. Semian's §1981 claim should be dismissed because he has not plead a claim for race discrimination, as that statute requires.

Mr. Semian's §1981 claim fails because he has not alleged he was discriminated against because of his race. 42 U.S.C. §1981 provides protections against discrimination based on *race* and states that all people in the United States "shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. §1981(a). Therefore, to state a claim under §1981, a plaintiff "must allege facts in support of the following elements: (1) [that the plaintiff] is a member of a *racial minority*; (2) intent to discriminate *on the basis of race* by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts[.]" *Brown v. Philip Morris Inc.,* 250 F.3d 789, 797 (3d Cir. 2001) (quotation and citations omitted) (emphasis added); *see also Shaare Tefila Congregation v. Cobb,* 481 U.S. 615, 616–17 (1987).

Mr. Semian has not alleged that he is a member of a racial minority. Nor has he alleged that the Department intended to discriminate against him on the

basis of his race. Accordingly, his §1981 claim should be dismissed.

### E. Mr. Semian's claim for tortious interference should be dismissed because it is barred by the doctrine of sovereign immunity.

Mr. Semian's tortious interference claim should likewise be dismissed; it is barred by the doctrine of sovereign immunity under both federal and state law.

Absent consent by the state, the Eleventh Amendment bars suits in federal court by private parties for money damages against states, state agencies and state officials in their official capacities. *Melo v. Hafer*, 912 F.2d 628, 642 (3d Cir.1990), *aff'd*, 502 U.S. 21, 31 (1991); *see also Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984); *Alabama v. Pugh*, 438 U.S. 781 (1978).

The Eleventh Amendment' bars suits against departments or agencies of the state having no existence apart from the state, *Laskaris v. Thornburgh*, 661 F. 2d 23, 25 (3d Cir. 1981), *citing Mt. Healthy City Board v. Doyle*, 429 U.S. 274, 280 (1977), and applies regardless of the relief requested. *Cory v. White*, 457 U.S. 85, 90-91 (1982). While a state may consent to being sued in federal court, Pennsylvania has expressly refused to do so. 42 Pa. C.S. § 8521(b); 1 Pa. C.S. § 2310. *See Laskaris*, 661 F.2d at 25.

Here, the Department is a state agency that has "no existence apart from the state." *Laskaris*, 661 F.2d at 25; 51 Pa. C.S.A. §701, et seq.. Mr. Semian's claim for tortious interference is derived from Pennsylvania state law. Therefore, the

doctrine of sovereign immunity applies under the Eleventh Amendment.

Mr. Semian's tortious interference claims are also barred under Pennsylvania's state sovereign immunity law. Sovereign immunity applies to cases brought against the Commonwealth under state law, and is only waived in such manner as the Legislature directs. *See Ezy Parks v. Larson*, 454 A.2d 928, 934-935 (Pa. 1983). The Commonwealth and, by extension, its agencies and employees, enjoy sovereign immunity by virtue of their status as "sovereign" and also pursuant to Section 11, Article 1 of the Pennsylvania Constitution, which limits cases brought against the Commonwealth "in such manner, in such courts and in such cases as the Legislature may by law direct." Pa. Const. Art. 1, § 11.

Except where specifically authorized by statute, Pennsylvania's Legislature has waived sovereign immunity only in the limited instances set forth in Title 42 (relating to judiciary and judicial procedure) and 62 (relating to procurement):

> When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.

1 Pa. C.S.A. § 2310. Section 8522(b) of Title 42 enumerates nine areas in which the General Assembly has waive sovereign immunity.[5] None applies here. Nor do

---

[5] The areas in which the Commonwealth has waived its sovereign immunity include: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4)

Mr. Semian's claims relate to "procurement" under Title 62. They are not "specifically authorized by statute" either. Accordingly, Semian's claim falls outside of the narrow areas where the Commonwealth has waived its sovereign immunity and his claim is thus barred under state law.

Mr. Semian's tortious interference claims are barred by the doctrine of sovereign immunity under both federal and state law and, therefore, they should be dismissed.

### F. Mr. Semian's Whistleblower claim should be dismissed because it is time barred.

Mr. Semian's Whistleblower claim is time barred and, therefore, should be dismissed. Pennsylvania's Whistleblower Act requires that anyone alleging a violation the act "bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within 180 days after the occurrence of the alleged violation." 43 P.S. §1424(a). There are no exceptions.

Mr. Semian was terminated on October 25, 2015. He filed his complaint in this matter on July 5, 2017, well beyond the 180 provided by statute. Accordingly, Mr. Semian's Whistleblower claim should be dismissed.

---

Commonwealth real estate: (5) potholes and other dangerous conditions; (6) car, custody, and control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. C.S.A. § 8522(b).

## V. CONCLUSION

For the foregoing reasons, the Department's Motion should be granted and Mr. Semian's Complaint should be dismissed.

                                               **Respectfully submitted,**

                                               **JOSH SHAPIRO**
                                               **Attorney General**

                                      By:   *s/ Jessica S. Davis*
                                                 **JESSICA S. DAVIS**

| | |
|---|---|
| **Office of Attorney General**<br>**15th Floor, Strawberry Square**<br>**Harrisburg, PA 17120**<br>**Phone: (717) 783-6270**<br><br>[jdavis@attorneygeneral.gov](mailto:jdavis@attorneygeneral.gov)<br><br>**Date: November 13, 2017** | **Senior Deputy Attorney General**<br>**Attorney ID 94560**<br><br>**KENNETH L. JOEL**<br>**Chief Deputy Attorney General**<br>**Chief, Civil Litigation Section**<br><br>**Counsel for Defendant Department of Military Veterans Affairs** |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL SEMIAN,                          : | |
|          **Plaintiff**  : | |
|                                                    : | No. 3:17-CV-1183 |
| v.                                                : | |
|                                                    : | Judge Mariani |
| DEPARTMENT OF MILITARY       : | |
| AND VETERANS' AFFAIRS –      : | Electronically Filed Document |
| GINO J. MERLI VETERANS        : | |
| CENTER,                                     : | *Complaint Filed 07/05/17* |
|          **Defendants**  : | |

## CERTIFICATE OF SERVICE

I, Jessica S. Davis, Senior Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on November 13, 2017, I caused to be served a true and correct copy of the foregoing document titled Defendant's Brief in Support of its Motion to Dismiss to the following:

## VIA ELECTRONIC FILING

**Harry T. Coleman, Esquire**
**Law Office**
**41 North Main Street, Suite 316**
**Carbondale, PA  18407**
harry@harrycolemanlaw.com
*Counsel for Plaintiff*

                                        *s/ Jessica S. Davis*
                                        **JESSICA S. DAVIS**
                                        Senior Deputy Attorney General