IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL SEMIAN<br><br>                                    Plaintiff,<br>          v.<br><br>DEPARTMENT OF MILITARY AND<br>VETERANS' AFFAIRS-GINO J.<br>MERLI VETERANS' CENTER<br><br>                                    Defendant. | JURY TRIAL DEMANDED<br><br>NO: 3:17-CV-1183<br><br>HONORABLE<br>ROBERT D. MARIANI |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT
DEPARTMENT OF MILITARY AND VETERANS AFFAIRS'
(THE "DEPARTMENT") MOTION TO DISMISS PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 12 (b)(6).**

*NOW COMES* Plaintiff, Michael Semian, by and through counsel, Harry T. Coleman, Esquire and hereby files, pursuant to the United States District Court for the Middle District of Pennsylvania Local Rule 7.6, his Brief in Opposition to the Defendants' (the "Department) Motion to Dismiss (Doc. 40) as follows:

## I.   INTRODUCTION

Michael Semian ("Semian"), an openly homosexual man, competently served as the Commandant of the Gino J. Merli Veterans' Center in Scranton and led the Northeast Veterans' Center through a tumultuous

1

time. Despite repeated requests by the Plaintiff to his superiors, the Defendants intentionally handicapped Mr. Semian's leadership by consistently understaffing his nursing department and allowing him to work without a Director of Nursing which impacted the infectious disease and wound care for military veteran patients at the Merli Center.

As discussed more fully below, with the State of Pennsylvania providing inspection and rating of Veterans' homes throughout the Commonwealth, Mr. Semian was the easy "fall guy" because of his sexual orientation for the Department's failure to heed his warnings and requests relative to nursing shortfalls in the area of infectious disease and wound care of the veteran patients.

Defendants move to dismiss under Rule 12(b)(6) for failure to state a claim.  They assert that Michael Semian has not set forth a claim for gender discrimination under Title VII of 42 U.S. § 2000, or under the Pennsylvania Human Relations Act, on the basis of sexual orientation. Defendants seek dismissal of Plaintiff's Title VII claim asserting that no Right to Sue letter was received by Plaintiff despite Exhibit "A" to the Complaint which reveals a dual filing by Plaintiff with both the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC"). Defendants also move for dismissal of

the state law tortious interference claim asserting sovereign immunity and the Plaintiff's Pennsylvania Whistleblower claim as untimely.   Plaintiff contests the arguments advanced by the Plaintiff and submits that the Motion to Dismiss should be denied.

Plaintiff concedes his claim under 42 U.S. C. ¶ 1981.

Individuals who are discriminated against in their workplace because of their sexual orientation have protection under Title VII.  Oncale, *Price Waterhouse*, and *Hivley,* discussed below*,* demonstrate sexual orientation is encompassed under sex for a Title VII action.  *See generally Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75 (1998); *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989); *Hively v. Ivy Tech Cmty. Coll. Of Ind.*, 853 F.3d. 339 (7th Cir. 2017).  In addition, public policy dictates the United States is moving to include additional protections to individuals who are discriminated against because of their sexual orientation.  For these reasons, sexual orientation is protected against by Title VII protection and the defendants' motion should be dismissed.

Under Title VII a retaliation claim requires "(1) [Plaintiff] was engaged in an activity protected under Title VII; (2) [plaintiff] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action."   *Crawford v.*

*Carrrol*, 529 F.3d. 961, 970 (11th Cir. 2008). The first element is satisfied because Semian's right to protection in his employment setting as a gay man is protected by Title VII. *See Clark Cty. Sch. Dist. V. Breeden*, 532 U.S. 268,270-71 (2001); (Doc 1 ¶ 85, 87-93). Michael Semian suffered an adverse employment action when discharged by Defendant, satisfying the second element. *See generally Weidman v. Wal-mart,* 141 F.3d. 1453 (11th Cir. 1998); (Doc 1 ¶ 84). Finally, the third element was satisfied because of the sexual orientation of Semian and his repeated complaints of staffing deficiencies impacting patient care and this served as the but-for cause of Semian's demotion. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2528 (U.S. 2013). For the following reasons, plaintiff has properly pled a claim under Title VII and Defendants' Motion to Dismiss should be denied.

In a similar fashion, Plaintiff's claim under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. §951 *et. seq* as well as the Plaintiff's state law claims have similarly been properly plead warranting denial of the Defendants' Motion to Dismiss.

As stated, Plaintiff concedes the claim under 42 U.S.C. §1981 as advanced in Count II.

## II.  <u>STANDARD OF REVIEW</u>

## Standard - 12(b)(6) Motion to Dismiss

In order to survive a motion to dismiss, a complaint need only allege "enough factual matter (taken as true)" to suggest that a violation occurred. *Bell Atl. Comp. v. Twombly,* 55.0 U.S. 544, 556 (2007) (emphasis added). In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in the Complaint as true and view them in the light most favorable to the non-moving party. *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006); *Armstrong Surgical Center, Inc. v. Armstrong County Memorial Hospital,* 185 F.3d 154, 155 (3d Cir. 1999). Essentially, "a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."' *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). In *Twombly,* the United States Supreme Court repeatedly emphasized that alleging plausible grounds for a claim 'simply calls for enough facts to raise a reasonable expectation that *discovery* will reveal evidence' to prove the alleged claim. *Twombly,* 550 U.S. at 556. A "complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely."' *Id.* This pleading standard governs "all civil actions and proceedings in the United States district

courts." *Ashcroft v. Iqbal,* 129 S.Ct. at 1953. Thus, if the facts alleged in the Complaint plausibly state the elements of the claims asserted, the Motion to Dismiss should be denied. "The basic tenets of the Rule 12(b)(6) standard of review have remained static."

*Ellingsworth v. Hartford Fire Insurance Company,* Civ. No. 16-3187, 2017 WL 1092341, at \*2 (E.D.Pa. Mar. 23, 2017) (citing *Spence v. Brownsville Area Sch. Dist.,* Civ. No. 08-626, 2008 WL 2779079, at \*2 (W.D. Pa. July 15, 2008)). The rules of pleading "still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations." *Ellingsworth,* 2017 WL 1092341, at \*2 (citing *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008). A claim should not be dismissed for failure to state a claim unless it appears beyond doubt that the non-moving party can prove no set of facts in support of its allegations which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Marshall-Silver Construction Co. v. Mendel,* 894 F.2d 593, 595 (3d Cir. 1990). "If more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules." *Alston v. Parker,* 363 F.3d 229,233 n. 6 (3d Cir. 2004) (citing *Swierldewicz v. Sorema. N.A.,* 534

U.S. 506, 512 (2002) ("This simplified notice pleading standard relies on liberal discovery  rules to define facts and issues and  to dispose of unmeritorious  claims.")).

## III.   <u>FACTS AND PROCEDURAL HISTORY</u>

Michael  Semian,  an  experienced  and  licensed  nursing  home administrator,  was appointed Commandant/Administrator at the Gino Merli Veterans' Center in Scranton in June of 2010. (Doc. 1 ¶ 5-12).

Following discharge, the Plaintiff timely filed an administrative charge of discrimination with the PHRC and cross filed with the EEOC. Plaintiff exhausted his administrative remedies.  (Doc. 1 ¶ 27-28).

Plaintiff's  employment  with  the  Defendant  from  June  of  2010  to October 2015 was marked with innovative and notable practices and procedures introduced by Plaintiff.  (Doc. 1 ¶ 29-52).

Since 2012 the position of Infection Control and Wound Nurse at the Merli Center never enjoyed consistency and competency which the Plaintiff continuously brought to the attention of his superiors. (Doc. 1 ¶ 53-63).

The Department of Health and Human Services conducts inspection and rating of Veterans' Homes throughout the Commonwealth.  As a result of the inspections, the Plaintiff's superiors;  the Director of Homes as well as  the  Medical  Director  of  Homes  placed  a  person  in  the  position  of

Infection Control and Wound Nurse at the Merli facility who was unqualified for the position.   The Plaintiff continuously complained and alerted his superiors that a competent and effective Director of Nursing and Infection Control and Wound Nurse was critical to the healthcare needs of the resident veterans at the Gino Merli facility. (Doc. 1 ¶ 71). The inspection and ratings of the facility continuously underperformed which the Plaintiff predicted in his constant pleas regarding nursing leadership shortages. (Doc. 1 ¶ 64-78).

Despite the shortcomings of the Merli facility's with regard to licensing and regulatory compliance, the Plaintiffs annual performance evaluations were always exceptional and positive. (Doc. 1 ¶ 79-83).

Despite the Plaintiff's repeated requests for proper and competent nursing staffing at the facility and his exceptional evaluations, the Plaintiff was terminated from employment on October 25, 2015 which the Plaintiff asserts was made easier because of his sexual orientation as he was made the "scapegoat" for the facility's failures.  (Doc. 1 ¶ 85).

## IV.   COUNTERSTATEMENT OF ISSUE PRESENTED

**A.   HAS PLAINTIFF PROPERLY ALLEGED DISCRIMINATION BASED ON SEXUAL ORIETATION WHICH IS A COGNIZABLE CLAIM UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964?**

**SUGGESTED ANSWER: IN THE AFFIRMATIVE.**

**B.   SHOULD THE DEFENDANTS' MOTION TO DISMISS THE PLAINTIFF'S TITLE VII CLAIM BE DEEMED MERITLESS BECAUSE PLAINTIFF DID RECEIVE THE REQUIRED RIGHT TO SUE LETTER FROM THE PHRC FOLLOWING A DUAL FILING?**

   **SUGGESTED ANSWER: IN THE AFFIRMATIVE.**

**C.   IS THE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE UNDER SOVERIGN IMMUNITY WHERE A SPECIFIC EXCEPTION TO SOVERIGN IMMUNITY DEALS WITH A MEDICAL ISSUE RAISED BY PLAINTIFF?**

   **SUGGESTED ANSWER: IN THE AFFIRMATIVE.**

**D.   SHOULD THE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S WHITLEBLOWER CLAIM FAIL AS THE PLAINTIFF TIMELY FILED AN ADMINISTRATIVE CLAIM?**

   **SUGGESTED ANSWER:    IN THE AFFIRMATIVE.**

**E.   SHOULD THIS COURT DEEM PLAINTIFF HAS NOT PRPERLY PLED HIS CLAIMS, SHOULD LEAVE TO AMEND THE COMPLAINT BE GRANTED?**

   **SUGGESTED ANSWER:    IN THE AFFIRMATIVE.**

## V.   ARGUMENT

### A. Plaintiff Can Maintain His Title VII Claim on the Basis of Sexual Orientation.

Mr. Semian may maintain his claim of gender discrimination pursuant to Title VII.  Defendants' Motion should be dismissed by this Court because discrimination due to an employee's sexual orientation is equivalent to discrimination based on sex under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §2000(e)-(2)(a)(1).   While the United States Supreme Court has been silent, so far, on this issue, many Circuit Courts, including our own, have held that protection from discrimination on the basis of "sex" encompasses protection from discrimination based on sexual orientation within Title VII. *See generally Hively v. Ivy Tech Cmty. Coll of Ind.,* 853 F.3d 339 (7th Cir. 2017); *Glenn v. Brumby,* 663 F.3d 1312 (11th Cir. 1011); *Prowel v. Wise Bus. Forms, Inc.,* 579 F.3d 285 (3d Cir. 2009); *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004). Additionally when reviewing recent Supreme Court decisions, especially the recognition of the fundamental right to same sex marriage as well as bills and enactments, it is abundantly clear our country is offering additional protection to individuals based on their sexual orientation.   *See Generally Obergefell v. Hodges*, 135 S. Ct. 2584 (2015).

For purposes of the pending Motion to Dismiss, the factual allegations of Plaintiff's Complaint must be taken as true. *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3rd. Cir. 1990).

Defendants move to dismiss under Rule 12 (b)(6) for failure to state a claim.  They argue that Michael Semian has not set forth a claim for gender discrimination under Title VII of 42 U.S.C. §2000 or under the Pennsylvania

Human Relations Act on the basis of sexual orientation.

Defendants submit Third Circuit precedents makes clear that claims of discrimination on the basis of sexual orientation alone, are insufficient to state a claim under Title VII citing *Bibby v. Philadelphia Coca Cola Bottling Co.,* 260 F.3d. 260, 262 (3rd Cir. 2001).

Recent pronouncements within the United States District Court within this Circuit state otherwise.  In *U.S. Equal Employment Opportunity Comm v. Scott Medical Health Center*, Number 16-225,U.S.Dist. LEXIS 153744 @*5-6)(W.D. Pa. Nov. 4, 2016), Judge Cathy Bisson ruled, "there is no more obvious form of sex stereotyping then making a determination that a person should conform to hetero-sexuality."

Importantly the Court will note that the Plaintiff has alleged that his separation from employment was the result of his sexual orientation. The Defendants' Motion to Dismiss is inappropriate and should be dismissed by this Court as discrimination based upon sexual orientation is protected under Title VII.

While it is true that until recently, no United States Court of Appeal for the Federal Circuits had extended Title VII to include sexual orientation as a protected class such that gay individuals, such as Michael Semian, could avail themselves of Title VII protection from

bias.

In the shadow of *Obergefell v. Hodges*, *supra,* the landmark United States Supreme Court decision favoring gay marriage, the United States Equal Employment Opportunity Commission (EEOC) issued a July 2015 administrative decision styled as *Baldwin v. Foxx*, wherein the EEOC held for the first time a person alleging sexual orientation discrimination had a cognizable claim under Title VII.  Your Plaintiff Michael Semian readily concedes that the *Baldwin* administrative decision is not binding on this Court. Your Plaintiff respectfully submits however that the decision evidences a societal shift toward greater protections for gay individuals such as Michael Semian and reveals a shift toward holding that Title VII does cover sexual orientation discrimination.

Title VII makes it "an unlawful employment practice for an employer… to fail or refuse to hire or discharge… or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions or privileges of employment, because of such individuals'… sex." 42 U.S.C. §2000 (e)-2)(a)(1).  In the instant matter, Defendants cite prior Third Circuit precedent holding Title VII does not prohibit discrimination based upon sexual orientation *citing*

12

*Bibby, supra.*

While Title VII itself is silent regarding sexual orientation, it is intellectually impossible to discuss sexual orientation without including the topic of sex and gender in the conversation. It is submitted that sexual orientation and gender cannot be separated as they both involve protection from the same type of conduct: protection against workplace discrimination for being sexually objectified.

As stated above, while the Supreme Court has not specially addressed the issue presented to this Court herein, the Supreme Court has provided guidance. "We see no justification in the statutory language or our precedents for a categorical rule excluding same-sex harassment claims from coverage under the Title VII". *Onacle*, supra at 523 U.S. at 79.

Recent pronouncements by United States District Courts have denied Motions to Dismiss gender discrimination claims such as presented herein. *See EEOC v. Scott Medical Health Center*, Number 16-225,U.S.Dist. LEXIS 153744 @*5-6)(W.D. Pa. Nov. 4, 2016) and *Ellingworth v. Hartford Fire Insurance,* No. 16-3187, U.S. Dist. LEXIS 42061@*1-2 (E.D. Pa. March 23, 2017).

A Title VII Plaintiff, such as Michael Semian, may make a claim for

discrimination "under either the pretext theory set forth in *McDonnel Douglas Court v. Green*,[411 U.S. 792, (1973)], or the Mixed-Motive theory set forth in *Price Waterhouse v. Hopkins* [,490 U.S. 228 (1989)], under which a Plaintiff may show that an employment decision was made based on both legitimate and illegitimate reasons." *Makky v. Chertoff,* 541 F.3d. 205, 213 (3rd. Cir. 2008).

To proceed with his claim for gender discrimination under *McDonnell-Douglas* Test, Plaintiff must plead the elements of a *prima facia* case: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under conditions giving rise to the inference of discrimination. *See, e.g. Jones v. Sch. Dist. Ov Phila*, 198 F.3d 403, 410-411 (3rd. Cir. 1999).

Plaintiff's Complaint does not specify whether he intends to proceed under a "mixed motive" or "pretext" theory in the instant litigation. The distinction between these two types of cases "lies in the kind of proof the employee produces on the issue of the (employees) bias, "*Starceski v. Westingtouse Elec. Corp.*, 54 F.3d. 1089, 1097 (3rd. Cir. 1995), and Plaintiff here has no obligation to plead the proof needed for these claims. *See Radabaugh v. Z.P. Feed Mills, Inc.,* 997

F.2d 444, 448 (8th Cir. 1993)(stating that "[w]hether a case is a pre-text case or a mixed-motives case is a question for the Court once all the evidence has been received"). For purposes of noting the elements Semian must plead to state a disparate treatment claim the Court must take it as a given that he may advance either a mixed-motive or a pre-text theory.

Our United States Court of Appeals for the Third Circuit has instructed "…,at least for purposes of pleading proficiency, a Complaint need not establish a *prima facia* case in order to survive a motion to dismiss" *See Connelly v. Lane Construction*, No. 14-3792 (January 11, 2016).

A prima facia case is a "evidentiary standard, not a pleading requirement," *Swierkiewicz v. Sorima, N.A.*, 534 U.S. 506, 510 (2002), and therefore is her "not a proper measure of whether a Complaint fails to state a claim." *Fowler v. UPMC Shadyside*, 578 F.3d. 203, 213 (3rd. Cir. 2009). Consequently, instead of requiring a *prima facia* case, the post *Towombly* pleading standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." Phillips v. Cty. Of Allegheny, 515 F.3d. 224, 234 (3d. Cir. 2008 (quoting Towombly, 550 U.S. at 566).

In essence, Defendant argues that Mr. Semian may not proceed on his claims brought pursuant to Title VII because 1) sexual orientation claims are not cognizable under Title VII, 2) Plaintiff failed to exhaust administrative remedies with respect to his Title VII claim and 3) Plaintiff has failed to adequately plead a gender discrimination claim.

Since this Court decided *Bibby,* which was affirmed by the Court of Appeals, *Bibby v. Philadelphia Coca Cola Bottling Co.,* 260 F.3d 257 (3d Cir. 2001), district courts in this Circuit and elsewhere "throughout the county have endorsed an interpretation of Title VII that includes a prohibition on discrimination based on sexual orientation." *EEOC v. Scott Medical Health Center, P.C.,* No. 16-225, 2016 WL 6569233, at *7 (W.D.Pa. Nov. 4, 2016) (citing *Isaacs v. Felder Services, LLC,* 143 F.Supp.3d 1190, 1193 (M.D. Ala. 2015); *Terveer v. Billington,* 34 F.Supp.3d 100 (D.D.C. 2014); *Heller v. Columbia Edgewater Country Club,* 195 F.Supp.2d 1212, 1222 (D.Or. 2002); *Videckis v. Pepperdine Univ.,* 150 F.Supp.3d 1151 (C.D.Cal. 2015)); *see also Ellingsworth v. Hartford  Fire Insurance Company,* No. 16-3187, 2017 WL 1092341,  at *4-5 (E.D.Pa. Mar. 23, 2017) (citing *Scott,* 2016 WL 6569233); *Roadcloud v. City of Philadelphia,* No. 13-00777, 2014 WL 43759, at *6 (E.D.Pa. Jan. 6, 2014) (gender discrimination claim pursuant to Title VII permitted to

proceed).

A plaintiff can present a viable Title VII claim where he presents facts that he was discriminated against "because of sex". *Ellingsworth,* 2017 WL 1092341, at *4. A plaintiff may do this by alleging facts that he did not fit his employer's view of what it means to be a man. *See Id.* As the District Court in *Scott* held, "[t]here is no more obvious form of sex stereotyping than making a dete1mination that a person should conform to heterosexuality." *Scott,* 2016 WL 6569233, at *6.

Mr. Semian has alleged sufficient facts that he was discriminated against and harassed because he failed to fit his employer's view of what it means to be a man and that, as the "fall guy",  he was subjected to adverse treatment "because of' his sex. More specficially, Mr. Semian alleges that he was subjected to repeated derogatory comments regarding his gender/sexual orientation and/or the perception that he acted effeminate or did not exhibit stereotypically male traits. Based upon these assertions here, Mr. Semian should be permitted to proceed on his Title VII claims of gender discrimination.

Further,  as the Court in *Scott* found, Mr. Semian as the Department's easy fall guy was subjected to different treatment, even if the Court determines that they were not specifically related to gender

discrimination , were nonetheless "because of' Mr. Semian's sex and thus actionable. "There is no more obvious form of sex stereotyping than making a determination that a person should conform to heterosexuality." *Scott,* 2016 WL 6569233, at *6.  Here, Mr. Semian has clearly pled facts that make out a claim that he was subjected to discrimination on the basis of his life style choice and this factored into his termination of employment. For this additional reason, and relying upon the sound reasoning set forth by the District Court in *Scott,* Mr. Semian should be permitted to proceed on his Title VII claims.

For all of these reasons, Plaintiffs Complaint sets forth a cognizable claim of discrimination in violation of Title VII and Defendant's Motion should be denied.

## B. Plaintiff Exhausted His Administrative Remedies with Respect to His Title VII Claim

Contrary to Defendant's argument that Mr. Semian "has not received a Right to Sue letter" in connection with Title VII claim, Mr. Semian not only included specific allegations and language in his administrative complaint that raised this issue, and such a claim was within the scope of a reasonable investigation by the administrative agency, but also attached a copy of that Right to Sue letter to his Complaint.  The Court is also directed to the Right to Sue letter. Plaintiff

Michael Semian first sought relief through administrative proceedings. The Plaintiff filed a timely written charge of discrimination (No. 201503318) against Defendant with the Pennsylvania Human Relations Commission ("PHRC") alleging employment discrimination (Doc. 1 ¶ 27(b)) & Exhibit "A" to Plaintiff's Complaint.

Defendants seek dismissal of Plaintiff's Title VII Claim asserting no Right to Sue letter was received by Plaintiff despite Exhibit "A" to the Complaint. A close review of the Exhibit reveals an EEOC filing number clearly evidencing the fact that Semian dual filed his claim with both the PHRC and the EEOC.

For these reasons, any argument that Mr. Semian failed to exhaust his administrative remedy with respect to his Title VII claim lacks merit, and Defendants' motion to dismiss should be denied.

Given that failure to exhaust administrative remedies is an affirmative defense as to which Defendant bears the burden of proof, Defendant has the burden to show that gender based discrimination was not within the scope of a reasonable investigation growing out of Mr. Semian's administrative complaint. *See Rupert, et al. v. PPG Industries, Inc., et al.,* 2009 WL 596014 at *32-34 (W.D.Pa. Feb. 26, 2009) (citing *In re Bressman,* 327 F.3d 229 (3d Cir.2003) (to obtain summary

judgment on an affirmative defense as to which the Defendant has the burden of proof, they had the burden of supporting their motions "with credible evidence ... that would entitle [them] to a directed verdict if not controverted at trial.")).

In explaining the applicable standard, the Third Circuit has affirmed that the "parameters of a civil action in the District Court are defined by the scope of the EEOC investigation *which can reasonably be expected to grow out of the charge of discrimination..." Anjelino v. New York Times Co.,* 200 F.3d 73, 94 (3d Cir.1999) (quoting *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398-99 (3d Cir.1976)) (emphasis added).

Here, contrary to Defendant's false assertion that Mr. Semian needed a separate Right to Sue Letter to advance his Title VII claim, the dual filing by Plaintiff with the PHRC and EEOC is evident from the record.

Thus, Defendants' Motion to Dismiss on the basis of Mr. Semian's alleged failure to exhaust administrative remedies with respect to his Title VII claims should be denied.

## C. <u>Immunity Claim of Defendants</u>

It is submitted by Plaintiff Semian that the complained of actions of

the Defendants in terminating him because of his constant complaints relative to concern on patient care in the area of infectious disease and wound care at the Merli Center clearly falls within an enumerated exception to sovereign immunity. In Pennsylvania, Section 8522 of the Act provides a list of specific exceptions to the sovereign immunity of Commonwealth employees.

Your Plaintiff Semian contends that Defendants' actions fall within one of the enumerated exceptions-namely, the "medical-professional" exception, Section 8522(b)(2) of the Act. The medical-professional exception provides:

> **(b)   Acts which may impose liability.--** The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
>
> **(2)   Medical-professional liability.--** Acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel.

Section 8522(b)(2) of the Act. "As an exception to the rule of immunity of the Commonwealth from liability, the medical-professional liability waiver must be strictly construed and narrowly interpreted against the party

asserting liability." *Holland v. Norristown State Hosp.,* 584 A.2d 1056, 1058 (Pa. Cmwlth. 1990), *appeal denied,* 598 A.2d 286 (Pa. 1991). Prison facilities and Department employees may fall within this exception. *See, e.g., Wareham v. Jeffes,* 564 A.2d 1314, 1324 (Pa. Cmwlth. 1989) (concluding that prison infirmary was agency medical facility and chief health care administrator of prison was health care personnel within meaning of medical-professional exception).   There is little doubt that employees of the Department of Veterans Affairs also fall within this exception.

Your Plaintiff respectfully submits the complained of actions herein fall within the medical-professional exception waiver of the claimed Commonwealth sovereign immunity. In *Martz v. Southeastern Pennsylvania Transportation Authority,* 598 A.2d 580 (Pa. Cmwlth. 1991), an employee filed a complaint against the Southeastern Pennsylvania Transportation Authority (SEPTA), asserting claims of false arrest and imprisonment and malicious prosecution. SEPTA argued that it was immune from liability, and the employee countered that SEPTA's actions fell within the vehicle liability exception to sovereign immunity, Section 8522(b)(1) of the Act. The Pennsylvania Commonwealth Court explained that because the employee had pled "only the intentional torts of false

imprisonment and malicious prosecution," rather than negligence, SEPTA had not waived sovereign immunity. *Martz,* 598 A.2d at 582.

In the instant matter, the complained of actions of the Defendant as it relates to patient care and the silence afforded to Plaintiff's repeated request for competent nursing staffing in the area of infectious disease and wound care fall within the medical-professional exception.

Defendants' argument as to entitlement to sovereign immunity should be rejected at this stage of the proceedings. The Motion to Dismiss should be denied.

### D. <u>Plaintiff's Claim for Tortious Interference.</u>

For tortious interference with contract claims, Pennsylvania has specifically adopted the Restatement (Second) of Torts § 766, which provides that "[o]ne who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." See *Adler, Barish, Daniels, Levin and Creskoffv. Epstein*, 393 A.2d 1175, 1183 (Pa. 1978). Courts interpreting this standard have set forth the following elements that a plaintiff must

prove in order to prevail on a cause of action for tortious interference with an existing or prospective contractual relation -- "(l) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of the defendant's conduct." *Crivelli v. General Motors Corp..* 215 F.3d 386, 344 (3d Cir. 2000); *see also, Strickland v. University of Scranton*, 700 A.2d 979,985 (Pa. Super. 1997).

### 1.    Existence of a Contract

Essential to the right of recovery under a tortious interference with contract claim is the existence of a contractual relationship between the plaintiff and a third person other than the defendant. *Daniel Adams Associates, Inc. v. Rimbach Publishing, Inc.,* 519 A.2d 997, 1000 (Pa. Super. 1987). The Pennsylvania Supreme Court has defined a "prospective contractual relation" as "something less than a contractual right, but something more than mere hope." *Synthes v. Globus Medical, Inc.,* 2005 WL 2233441, *8 (E.D. Pa. Sept. 14, 2005) (quoting *Thompson*

24

*Coal Co. v. Pike Coal Co.*, 412 A.2d 466,471 (Pa. 1979)). A plaintiff must establish a reasonable probability that but for the wrongful acts of the defendant, a contractual relationship would have been established. *Thompson*, 412 A.2d at 417 (citing *Myers v. Arcadia, Inc.,* 180 A.2d 329, 331 (N.J. Super. 1962)).

Mr. Semian submits proof of this element of his claim will be easy. The Scranton *Times* chronicled the administrative reviews and shortcomings of the Merli Center and the Plaintiff's firing. Plaintiff has lost prospective employment post-termination directly related to his firing by the defendant.

Plaintiff should be afforded the opportunity to develop this fact which has been properly pled.

### 2. Purposeful Action Intended to Harm Existing Contract

Purposeful action intended to harm an existing contract can exist where the "the actor does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action." Restatement (Second) § 766, cmt. j.

Taking the allegations of Plaintiff's termination and Complaint as true, as the Court must at this stage, an inference can be drawn about

Defendants' knowledge of Plaintiff's continued career as a nursing home administrator and this leads to the logical conclusion that Defendant knew or should have known that its actions would be certain, or substantially certain, to interfere with Semian's relations and contracts See Doc. 1 § 84, 102). *See, e.g., Airline Terminal Services, Inc v. Lehigh-Northampton Airpo1i Authority,* 1996 WL 460059, *3 (E.D. Pa. Aug. **1,** 1996) (holding that plaintiff sufficiently alleged the necessary elements for tortious interference so as to defeat defendant's motion to dismiss, where plaintiff alleged defendant contracted with third party while knowing of third-party's exclusivity contract with plaintiff); see also, *Total Care Systems, Inc. v. Coons*, 860 F. Supp. 236,241 (E.D. Pa. 1994) (holding that plaintiffs allegations were sufficient to create a reasonable inference that tortfeasor conduct was substantially certain to interfere with plaintiffs contractual relations, where plaintiff alleged tortfeasor made disparaging remarks about plaintiff, attempted to intimidate employer into discharging plaintiff, and communicated incomplete and misleading information about plaintiff). Plaintiff has made such allegations here.

### 3.    Absence of Privilege or Justification

Defendants can't and in fact do not challenge the third element of

Plaintiff's tortious interference claim-- the absence of privilege or justification on the part of the defendant to interfere with or harm the existing or perspective relation. Plaintiff's allegations alone establish the inference relative to a a third party to support  the tortious interference claim.

### 4.    Damages

To prevail on a claim of tortious interference, Semian will need to prove the occasioning of actual damage that occurred as a result of (a) Defendants interference with Plaintiff's prospective employment  contracts See *Crivelli*, 215 F.3d at 394. The Superior Court of Pennsylvania  has stated that  liability for tortious  interference  with prospective or contractual relations  includes  "the pecuniary  loss of the benefits of the contract or the prospective  relation; consequential  losses for which the interference  is a legal cause; and emotional  distress  or actual  harm to reputation,  if they are reasonably to be expected to result from the interference." *Pawlowski v. Smorto*, 588 A.2d 36, 40 (Pa. Super. 1991) (citing *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. 1987)).

Plaintiff Semian's allegations are sufficient to withstand  the lenient Rule 12(b)(6) standard,  assuming that Plaintiff can put forth evidence  of the  revenue  lost as  a result of Defendants' actions..

Consequently, for all of the foregoing reasons, it is respectfully submitted that Defendants' Motion to Dismiss the Plaintiff's tortious inference claim found in Count IV of the Complaint be denied.

### E. Plaintiff's Whistleblower Claim Pursuant to to 43 P.S. §1424(a)

The fifth count of Semian's complaint is a claim under the Pennsylvania Whistleblower Act, 43 Pa. C.S. Ch. 25. The Whistleblower Act makes it unlawful for an employer to subject an employee to adverse employment action because the employee "makes a good faith report...verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste." Id. at §1423(a). The Act allows an employee to bring a civil action for injunctive relief or damages within 180 days after the occurrence of the alleged violation. _Id._ at § 1424(a); *Peny v. Tioga County*, 649 A.2d 186, 188 (Pa. Cmwlth 1994); O'Rourke v. Pennsylvania Dep't of Conections, 730 A.2d 1039, 1042 (Pa. Cmwlth 1999).

The Whistleblower Act only protects against retaliation if the employee "makes a good faith report" to an "appropriate authority an instance of wrongdoing or waste." 43 Pa. C.S. § 1423(a). The Act defines "wrongdoing" as "A violation which is not of a merely technical

or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." Id. at § 1422. A good faith report is a report of waste or wrongdoing "which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true."  Id. Semian's repeated complaint to his supervisors concerning the nursing shortcomings impacting patient care in the area of infectious disease and wound care. (See Doc 1 §§ 64-78).

The Complaint, dual-filed with the PHRA and the EEOC, focus completely on Semian's constant pleas and requests to his  supervisors at the Department of Military and Veterans' Affairs and his termination. There is no doubt that Semian believed that his pleas, falling on the deaf ears of his superiors, impacted patient care at the Merli Veterans Center, or he would not have filed these complaints with his supervisors and the appropriate agencies. His reports were not made with the "consideration of personal benefit" forbidden by the statute.

This Court can find guidance in *Podgurski v. Penn. State Univ.,* 722 A.2d 730 (Pa. Super. 1998) as illustrative of the broad scope of "wrongdoing" under the statute. In that case, the court held that internal

violations of administrative policies such as "expenditures of unnecessary funds, dismissal of workers absent any reason, hiring of workers without proper qualification, false reporting of hours worked, and improper conduct by employees while at work" could constitute wrongdoing under the Whistleblower Act.   Id. at 732.   It would be insulting to argue that the patient care in the area of infectious disease and wound care is not an area of importance to the patients placed by into the care of the Merli Center. There is no indication in the Complaint that the plaintiff was motivated by personal gain in reporting these violations where Semian was seeking competent and consistent nursing oversight and staffing in the area of wound care and infectious disease.

Semian's complaints constituted a good faith report for the purposes of the Whistleblower Act and it  excluded "consideration of personal benefit".

In short, Semian made a good-faith report of wrongdoing under the statute, which is necessary to invoke its protection.

Defendant argues that the Complaints were not timely filed. However, this argument loses sight of the need to exhaust administrative remedies.  Had Plaintiff filed the instant Complaint so as to meet the timing requirement of the PHRC, the Defendant would

quickly file a Motion to Dismiss based on the failure to exhaust administrative remedies.  This procedural quandary was properly addressed by Plaintiff who timely filed his administrative claim with the PHRC.

For all the foregoing reasons, it is respectfully requested in light of the detailed Complaint filed and the liberal pleading requirements of the Federal Rules of Civil Procedure, that the Defendants' Motion to Dismiss the Whistleblower Complaint be denied.

## F. **Plaintiff Requests Leave to Amend Should This Court Determine he has not Adequately Pled his Claims**

Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading should be freely given "when justice so requires." Fed. R. Civ. P. 15(a); *Long v. Wilson,* 393 F.3d 390,400 (3d Cir. 2004).  Should this Honorable Court determine that Plaintiff has failed to adequately plead any of his claims, Plaintiff respectfully requests leave to amend his Complaint to correct any deficiencies identified in his pleading.

## VI.   CONCLUSION

For all of the foregoing reasons, Plaintiff Michael Semian respectfully requests that Defendant's Motion to Dismiss Plaintiffs Complaint Pursuant to Fed. R. Civ. P. 12(b) (6) be denied.

Dated: <u>December 22, 2017</u>      Respectfully submitted,

                                          LAW OFFICE OF HARRY T. COLEMAN

                                          BY:   <u>/s/ Harry T. Coleman</u>
                                                    Harry T. Coleman, Esquire
                                                    41 N. Main Street, Suite 316
                                                    Carbondale, PA  18407
                                                  570-282-7440
                                                570-282-7606, fax
                                                  Harry@HarryColemanLaw.Com
                                                  *Attorney for Plaintiff*

## <u>CERTIFICATE OF WORD COUNT</u>

I Harry T. Coleman, Esquire, counsel for the Plaintiff hereby certifies that Plaintiff's Brief in Opposition to the Defendants' Motion to Dismiss contains 6,352 words and complies with Local Rule 7.8 and this Courts Order granting permission to file in excess of the word count.  In making this Certification, I have relied on the word count feature of the word processing software utilized in creating this Brief.


Dated:  December 22, 2017          Respectfully submitted,

LAW OFFICE OF HARRY T. COLEMAN

BY:   /s/ Harry T. Coleman            
Harry T. Coleman, Esquire
41 N. Main Street, Suite 316
Carbondale, PA  18407
570-282-7440
570-282-7606, fax
Harry@HarryColemanLaw.Com
*Attorney for Plaintiff Michael Semian*