THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL SEMIAN,

    Plaintiff,

v.

DEPARTMENT OF MILITARY AND
VETERANS' AFFAIRS – GINO J.
MERLI VETERANS CENTER,

    Defendant.

3:17-CV-1183
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

In his Complaint, (Doc. 1), filed July 5, 2017, Plaintiff, Michael Semian, asserts employment discrimination based on sexual orientation and other claims under federal and state law against his former employer and now Defendant, the Pennsylvania Department of Military and Veterans' Affairs – Gino J. Merli Veterans Center, for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (Count I); 42 U.S.C. § 1981 (Count II); the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951, *et seq.* (Count III); tortious interference with prospective contractual relations (Count IV); and the Pennsylvania Whistleblower Law ("Whistleblower Law"), 43 Pa. Cons. Stat. Ann. § 1421, *et seq.* (Count V). On September 26, 2017, Defendant filed a Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted (the "Motion"), (Doc. 12), and filed a brief in support of its Motion on November

13, 2017, (Doc. 23). Plaintiff filed a brief in opposition to the Motion on December 22, 2017. (Doc. 28). Defendant did not file a reply brief in response to Plaintiff's opposition brief. Accordingly, the parties have fully briefed the Motion, and it is ripe for decision. For the reasons that follow, the Court will grant the Defendant's Motion in part and deny it in part, and will grant Plaintiff leave to amend his Complaint to address deficiencies in Counts I and III.

## II. Factual Allegations

Plaintiff's Complaint, (Doc. 1), alleges the following facts which, for the purposes of resolving Defendant's Motion, the Court takes as true:

Plaintiff, a Pennsylvania resident and gay male, is and has been a "Licensed Nursing Home Administrator in the Commonwealth of Pennsylvania" since 1994. (*Id.* ¶¶ 1-3). Plaintiff has worked in the hospital and nursing care field since 1991. (*Id.* ¶¶ 5-12). In June 2010, Plaintiff was appointed to be the Commandant of the Gino J. Merli Veterans' Center ("Merli Veterans' Center"), located in Scranton. (*Id.* ¶ 11). Defendant, a state agency, operates and maintains the Merli Veterans' Center and other similar facilities ("veterans' homes") in Pennsylvania to provide healthcare, including skilled nursing care, to veterans, and was Plaintiff's employer at the time he worked at the Merli Veterans' Center.[1] (*Id.* ¶¶

---

[1] Plaintiff is often imprecise in the Complaint regarding the identity of the Defendant in this matter, variously stating or alluding that Defendant is the Merli Veterans' Center (Doc. 1 at 1), the Commonwealth of Pennsylvania (*id.* ¶ 14), or the Department of Military and Veterans Affairs (*id.* ¶¶ 12-13, 17 ("The Department, through its facilities . . . .")). Near the end of his Complaint, Plaintiff alleges that it was the Pennsylvania Department of Military and Veterans' Affairs that terminated his employment. (*Id.* ¶ 84). *See also* (Doc. 2-1 (Exhibit B to Complaint)); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an

2

12-17). Defendant "acted by and through its agents, servants, and employees, each of whom acted within the scope of his or her job duties." (*Id.* ¶ 21).

As Commandant of the Merli Veterans' Center, Plaintiff was responsible for "managing, directing, and controlling all services" for the facility. (*Id.* ¶ 31). During his tenure, Plaintiff received evaluations from his supervisor, DMVA's Director of Homes. (*Id.* ¶¶ 79-80). "From 2010 through 2013," these evaluations "always exceeded expectations." (*Id.* ¶ 79). Subsequent evaluations, starting in June 2013, included ratings of "exceeds expectations" on many job elements, but also included some ratings of "meets expectations" or "needs improvement." (*Id.* ¶¶ 81-83). Plaintiff's evaluation covering the period of July 2014 through June 2015 (four months before he was terminated) indicated that the "Results" job element was rated "needs improvement," but that "[t]he organization [Merli Veterans' Center] has cleared the DOH [Pennsylvania Department of Health] Plan of Correction and is awaiting annual inspection." (*Id.* ¶ 83).

The Pennsylvania Department of Health ("DOH") conducts inspections ("surveys") and ratings of veterans' homes to ensure compliance with state and federal rules and regulations. (*Id.* ¶¶ 64-65). These surveys can occur multiple times throughout the year: the Merli Veterans' Center was surveyed ten times in 2014, and seven times in 2015 before

---

exhibit to a pleading is a part of the pleading for all purposes."); *Chester Cty. Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990) ("written instrument" such as a contract attached to a Complaint is a documentary exhibit that can be considered on a Motion to Dismiss). Plaintiff also acknowledges that "the Department" is the Defendant in his opposition brief to Defendant's Motion to Dismiss. (*See* Doc. 28 at 1). Accordingly, the Court will take the Defendant in this matter to be the Pennsylvania Department of Military and Veterans Affairs ("DMVA").

3

Plaintiff's employment termination in October of that year. (*Id.* ¶¶ 72-73). In 2013, a survey revealed issues at the Merli Veterans' Center with respect to the facility's Infection Control and Wound Nurse, who was found to "not have an understanding of the position and was unable to perform the duties of his position." (*Id.* ¶ 66). Defendant replaced the Infection Control and Wound Nurse with a new person, who "lacked formal training or experience in wound care or infection control," and whose appointment was questioned by Plaintiff. (*Id.* ¶ 67).

Following the appointment of the new Infection Control and Wound Nurse, the Merli Veterans' Center continued to be cited for infection control and wound issues. (*Id.* ¶ 68). Defendant decided that an "outside wound company" could assist with these issues and anticipated that the company would be on site a few days a week. (*Id.* ¶ 69). However, the company was only on site one day a week, and was selected without input from the Plaintiff or the Merli Veterans' Center's Director of Nursing ("DON"). (*Id.*)

Additionally, the Merli Veterans' Center had other nursing leadership staffing issues around this time. (*Id.* ¶¶ 53-60). From 2013 to 2015, the facility's Certified Registered Nurse Practitioner ("CRNP") position was unfilled, and the DON position was filled by a rotating selection of staffers from August 2013 to September 2014. (*Id.* ¶¶ 55, 58-60). Plaintiff "continuously complained to his superiors" at the DMVA "that a competent and effective DON and Infection Control and Wound Nurse was critical to the health care needs" of the residents of the Merli Veterans' Center. (*Id.* ¶ 71).

A DOH survey completed on September 25, 2015 found that the Merli Veterans' Center was deficient in compliance with regulations, including in the areas of "infection disease [sic] and wound care." (*Id.* ¶ 78). In 2015, the DMVA's Director of Homes directed the DON and Plaintiff not to have the Merli Veterans' Center's CRNP attend meetings with DOH surveyors because the CRNP would "'kill us' during the survey process." (*Id.* ¶ 56.) Plaintiff protested this order from the Director of Homes. (*Id.*) On October 25, 2015, Defendant terminated Plaintiff's employment. (*Id.* ¶ 84; Doc. 2-1). Plaintiff alleges that his employment termination "was due, in part, to his sexual orientation as he was made a 'scapegoat' for the failures of the [DMVA] in meeting the Plaintiff's . . . staffing requests for the Gino J. Merli Veterans' Facility." (*Id.* ¶ 85). In December 2015, DOH downgraded the Merli Veterans' Center license to a "Provisional IV" license, the lowest level. (Doc. 1 ¶ 75).

Plaintiff further asserts he "has exhausted his administrative remedies" before bringing this Complaint and timely filed this action. (*Id.* ¶¶ 27-28).

### III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

5

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing

6

court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting *Iqbal*, 556 U.S. 679).

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV. ANALYSIS

Defendant seeks to dismiss all of Plaintiff's claims under Rule 12(b)(6). The Court will address each of Plaintiff's claims in turn.

### A. Counts I & III - Discrimination on the Basis of Sexual Orientation in Violation of Title VII and the PHRA

In the Complaint's first and third counts, Plaintiff alleges he was discriminated against in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), and the PHRA, 43 Pa. Cons. Stat. Ann. § 955(a), on the basis of his sexual orientation when Defendant terminated him from his position as Commandant at the Merli Veterans' Center. (Doc. 1 ¶¶ 85-93, 98-100). In its Motion, Defendant raises two arguments to dismiss these claims: 1) Plaintiff's Title VII claim is time barred; and 2) Plaintiff failed to properly plead a claim for sex discrimination. (Doc. 23 at 6-10).

7

### 1. Time Bar to Title VII Claim

Defendant argues that Plainitiff is time barred from bringing his Title VII claim because "he has not received a right to sue letter from the EEOC [Equal Employment Opportunity Commission], and it is too late now." (Doc. 23 at 8). Defendant correctly states the law with respect to the procedural requirements to bring Title VII claims in federal court. (*Id.* at 8-9). Title VII claims must first be filed as charges with the EEOC within 300 days of the alleged unlawful employment practice if charges are first filed with a state authority, and the EEOC must deliver a right to sue notice to the putative plaintiff before he can file suit in federal court. 42 U.S.C. § 2000e-5(e)(1), (f)(1); *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Defendant contends that because Plaintiff did not attach to the Complaint a right to sue letter from the EEOC, he did not receive a right to sue notice from the EEOC. (Doc. 23 at 8-9). Defendant also contends that Plaintiff did not plead that his charge was filed with the EEOC in a timely fashion. (*Id.* at 9).

Defendant's timeliness argument fails. "The pleading of conditions precedent [to filing suit] is governed by Rule 9(c), not Rule 8(a)." *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 112 (3d Cir. 2014). Rule 9(c) only requires that pleading conditions precedent requires alleging that "generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). And "[n]either *Iqbal* nor *Twombly* purport to alter Rule 9." *Hildebrand*, 757 F.3d at 112; *Oliver v. Scranton Materials, Inc.*, No. 3:14-CV-00549, 2015 WL 1003981,

at *3 (M.D. Pa. Mar. 5, 2015). Defendant's factual contentions in its Motion are controverted by paragraphs 27 and 28 of the Complaint, which allege, in relevant part, that "[t]he instant action is timely filed," "[t]he Plaintiff also cross-filed the afore-mentioned [sic] charges with the United States Equal Employment Opportunity Commission ("EEOC")", and "[t]he Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint." (Doc. 1 ¶¶ 27-28.) Plaintiff also attached a "right to sue" letter from the Pennsylvania Human Relations Commission ("PHRC"), dated January 31, 2017, noting that it had been one year since Plaintiff filed his complaint with the PHRC, and listing an EEOC case number in the heading. (Doc. 2 at 2). Thus, at the motion to dismiss stage, Plaintiff's allegations are sufficient under Rule 9(c) to avoid dismissal on the basis of timeliness.

## 2. Pleading Sufficiency

Defendant also argues that Plaintiff failed to properly plead a claim for sex discrimination under Title VII and the PHRA. Title VII and the PHRA both prohibit discrimination by an employer against an individual on the basis of that individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a); 43 Pa. Cons. Stat. Ann. § 955(a). "[T]he PHRA is construed consistently with interpretations of Title VII." *Eldridge v. Municipality of Norristown*, 514 Fed. App'x. 187, 189 n.2 (3d Cir. 2013) (citing *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083-84 (3d Cir. 1995)). A plaintiff can prove discrimination on a direct basis, which requires direct evidence of discriminatory animus. *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 513 (3d Cir. 1997); *Anderson v. Wachovia*

*Mortg. Corp.*, 621 F.3d 261, 269 (3d Cir. 2010). Alternatively, a plaintiff can prove discrimination on an indirect basis by satisfying the familiar three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). *See also Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006) ("To prevail on a claim for gender discrimination under Title VII and its analogous provision under the PHRA, [plaintiff] must satisfy the three-step burden-shifting inquiry laid out in *McDonnell Douglas*.").

Under the *McDonnell Douglas* framework, Plaintiff must first establish a *prima facie* case of sex discrimination, which requires a showing that: "(1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) members of the opposite sex were treated more favorably." *Burton*, 707 F.3d at 426 (citing *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). "A plaintiff may also meet the last element by showing that the adverse employment action 'occurred under circumstances that could give rise to an inference of intentional discrimination.'" *Id.* (quoting *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)). Like other courts, the Third Circuit has ruled that discrimination based on gender stereotypes is sex-based discrimination prohibited by Title VII. "[A] plaintiff may be able to prove that same-sex harassment was discrimination because of sex by presenting evidence that the harasser's conduct was motivated by a belief that the victim did not conform to the

10

stereotypes of his or her gender." *Bibby v. Phila. Coca Cola Bottling Co.*, 260 F.3d 260, 262-64 (3d Cir. 2001) (citations omitted) (further discussing plurality opinion in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989)). *See also Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 289 (3d Cir. 2009); *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 121 (2d Cir. 2018) (finding sexual orientation discrimination is sex-based discrimination prohibited by Title VII, and stating "[w]e now conclude that sexual orientation discrimination is rooted in gender stereotypes and is thus a subset of sex discrimination."); *Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339, 346 (7th Cir. 2017) (same, and stating "[o]ur panel described the line between a gender nonconformity claim and one based on sexual orientation as gossamer-thin; we conclude that it does not exist at all.").

In response to Plaintiff's *prima facie* showing, the burden shifts "to offer a legitimate non-discriminatory [justification] for the adverse employment action." *Burton*, 707 F.3d at 426 (quoting *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009)). "This burden is relatively light and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Id.* (citing *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)). "At this stage, 'the defendant need not prove that the articulated reason actually motivated its conduct.'" *Id.* (quoting *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003)). At the pleading stage, a plaintiff must only plead enough facts to state a plausible claim for relief under the *McDonnell Douglas* standard. *See Connelly*, 809 F.3d at 788-89 ("[A]t least for

11

purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss.").

Although the parties clash over the exact coverage of Title VII protections, (*compare* Doc. 23 at 7-8 (Defendant asserting Title VII does not prohibit discrimination solely on the basis of sexual orientation) *with* Doc. 28 at 9-18 (Plaintiff asserting the opposite)), their true dispute centers on whether Plaintiff has alleged sufficient facts to show improper sex-based discrimination. Defendant argues Plaintiff has not, in part, because he has not alleged facts that "he was discriminated against because he failed to conform to stereotypes of his gender." (Doc. 23 at 8). Plaintiff responds that he "has alleged sufficient facts that he was discriminated against and harassed because he failed to fit his employer's view of what it means to be a man and that, as the 'fall guy', he was subjected to adverse treatment 'because of' his sex." (Doc. 28 at 17).

While Plaintiff's opposition to Defendant's Motion illustrates that he believes he was discriminated against because of gender stereotyping, a brief submitted in opposition to a Motion to Dismiss is not a Complaint nor a substitute for absent allegations, and the Court agrees with Defendant that Plaintiff has failed to allege sufficient plausible factual material in his Complaint related to discrimination other than conclusory statements regarding possibly discriminatory reasons for his termination. (Doc. 1 ¶¶ 85-93). Thus, the Court will grant Defendant's Motion with respect to Counts I and III, but will grant Plaintiff leave to amend

his Complaint. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

### B. Count II – Claim Under 42 U.S.C. § 1981

Defendant challenges Count II, Plaintiff's claim under 42 U.S.C. § 1981, in its Motion on the basis that Section 1981 provides protections for racial minorities against discrimination based on race, see 42 U.S.C. § 1981(a); Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir. 2001), and that Plaintiff has not alleged any facts that he is a member of a racial minority or that he was discriminated against on the basis of his race. (Doc. 23 at 10). In his opposition to Defendant's Motion, Plaintiff "concedes" Count II. (Doc. 28 at 3-4). Accordingly, Defendant's Motion is granted with respect to Count II.

### C. Count IV – Tortious Interference Claim

Defendant argues for dismissal of Plaintiff's count for tortious interference with prospective contractual relations because sovereign immunity bars the claim. The Court agrees, and the claim shall be dismissed with prejudice.

The sovereign immunity of unconsenting states from suit in federal court is recognized by the Eleventh Amendment to the U.S. Constitution: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI; see also Walker v. Dep't. of Military and Veterans Affairs, No. 2:08cv267, 2008 WL 2433091, at *2 (W.D. Pa. June 12, 2008)

(citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) ("The Supreme Court has consistently held that the Eleventh Amendment immunizes an unconsenting state from suits brought in federal court by its own citizens as well as by citizens of another state.")). "Congress may abrogate the states' Eleventh Amendment immunity [from suit for violations of federal law] pursuant to its authority under section five of the Fourteenth Amendment provided it has unequivocally expressed its intent to do so." *Walker*, 2008 WL 2433091, at *2 (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73-74, 79 (2000)). Otherwise, states retain the ability to decide to consent to being sued in federal court. *Laskaris v. Thornburg*, 661 F.2d 23, 25 (3d Cir. 1981). Sovereign immunity applies to state departments or agencies having no existence apart from the state. *Id.* (citing *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).

Here, Defendant argues that Plaintiff's tortious interference claim is barred by sovereign immunity because: 1) the Department of Military and Veterans Affairs is a state agency; 2) Plaintiff's claim is brought under state law; and 3) there has been no waiver of sovereign immunity. (Doc. 23 at 11-13). Defendant maintains that Pennsylvania has "expressly refused" to waive sovereign immunity unless otherwise directed by the state Legislature. (*Id.* at 11-12); 42 Pa. Cons. Stat. Ann. § 8521(b); 1 Pa. Cons. Stat. Ann. § 2310; Pa. Const. art. 1, § 11; *Ezy Parks v. Larson*, 454 A.2d 928, 934-35 (Pa. 1983). And, Defendant contends, Pennsylvania's Legislature has only waived sovereign immunity in limited instances, which do not apply here. (Doc. 23 at 12-13); *see* 42 Pa. Cons. Stat. Ann.

§ 8522(b); 62 Pa. Cons. Stat. Ann. § 1702(b). Plaintiff responds that an "enumerated exception—namely, the 'medical-professional' exception," 42 Pa. Cons. Stat. Ann. § 8522(b)(2), applies in this instance to waive Defendant's sovereign immunity. (Doc. 28 at 21-22).

The Court agrees with Defendant that sovereign immunity applies to Plaintiff's tortious interference claim. In his Complaint, Plaintiff alleges that Defendant is a "department of the Commonwealth of Pennsylvania." (Doc. 1 ¶ 13); *see also* 51 Pa. Cons. Stat. Ann. § 701, *et seq.* (establishing DMVA); 43 Pa. Code § 7.1, *et seq.* (administrative regulations for establishment and management of DMVA veterans' homes). There has also been no waiver of sovereign immunity by Defendant in this case with respect to Plaintiff's tortious interference claim. Plaintiff's reliance on an exception to Pennsylvania's sovereign immunity statute is misguided, because that statute only creates exceptions to sovereign immunity for negligent acts:

> **(a) Liability imposed.**—The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, *for damages arising out of a negligent act* where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

42 Pa. Cons. Stat. Ann. § 8522(a) (emphasis added); *see also, e.g., Mitchell v. Lukenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010); *LaFrankie v. Milkich*, 618 A.2d 1145, 1149 (Pa.

Commw. Ct. 1992). Tortious interference with prospective contractual relations is an intentional tort. See *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 1183 (Pa. 1978). Plaintiff also alleges in his Complaint that Defendant and Defendant's employees "acted within the scope of his or her job duties," (Doc. 1 ¶ 21), and so there is no issue here of an act committed outside of the bounds of the scope of employment that could negate the application of sovereign immunity, *see* 42 Pa. Cons. Stat. Ann. § 8501 (defining "Commonwealth party" as "a Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office of employment"). Indeed, Pennsylvania district courts have held that Defendant is entitled to sovereign immunity in appropriate cases. *Moore v. Pa. Dep't of Military & Veterans Affairs*, 216 F. Supp. 2d 446, 454 (E.D. Pa. 2002); *Walker*, 2008 WL 2433091, at *2-3; *Fandino v. Pa. Dep't of Military & Veterans Affairs*, No. 13-CV-4302, 2013 WL 6022169, at *1 n.1 (E.D. Pa. Nov. 14, 2013). Thus, the Court finds it proper to apply sovereign immunity to Defendant regarding Plaintiff's tortious interference claim and will dismiss Count IV of the Complaint with prejudice. *Worth & Co., Inc. v. Getzie*, 11 F. Supp. 3d 484, 494-95 (E.D. Pa. 2014) (dismissing tortious interference claim against Pennsylvania state agency officials because of sovereign immunity); *Marin v. Schmider*, No. 1:14-cv-1523, 2015 WL 5882271, at *13-14 (M.D. Pa. Sept. 30, 2015) (dismissing "tortious interference with career" claim against Pennsylvania DOH official because of sovereign immunity).

### D. Count V – Pennsylvania Whistleblower Law Claim

Finally, Defendant asserts a time bar argument in favor of dismissal of Plaintiff's Pennsylvania Whistleblower Law claim (Count V). Defendant notes that the statute requires those alleging a violation to "bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within 180 days after the occurrence of the alleged violation," 43 Pa. Cons. Stat. Ann. § 1424(a), and argues that there are no exceptions to this limitations period. (Doc. 23 at 13). Because Plaintiff's employment was terminated on October 25, 2015 and he did not file his Complaint until July 5, 2017, Defendant concludes that his Whistleblower Law claim is time barred. (*Id.*). Plaintiff responds that, because he needed to exhaust administrative remedies with respect to his Title VII and PHRA claims, he waited to file his Complaint alleging all of Defendant's unlawful practices to avoid a "procedural quandary." (Doc. 28 at 30-31).

Plaintiff's position amounts to an equitable tolling argument, but the Court notes that the weight of authority from other courts suggests that the filing of an EEOC complaint does not toll the time period to file state tort claims, including a Whistleblower Law claim. *Plemmons v. Pa. Mfrs. Ass'n Ins. Co.*, Civ. A. No. 90-2495, 1991 WL 61128, at *2 (E.D. Pa. Apr. 13, 1991) (Title VII and Whistleblower Law action); *Villela v. City of Phila.*, No. CIV. A. 95-1313, 1995 WL 295318, at *4 (E.D. Pa. May 9, 1995) (Section 1983 and Whistleblower Law action). *See also Duran v. Jamaica Hosp.*, 216 F. Supp. 2d 63, 67 n.3 (E.D.N.Y. 2002) (listing cases, including *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322–23

(7th Cir.1992) (filing of EEOC charge did not toll the statute of limitation on employee's state law invasion of privacy claim); *Arnold v. U.S.*, 816 F.2d 1306, 1312–13 (9th Cir.1987) (holding state law tort claims are not tolled during pendency of Title VII action); *Dupree v. Hutchins Bros.*, 521 F.2d 236, 238 (5th Cir.1975) (finding state statute of limitation for § 1981 action was not tolled during pendency of EEOC claim)). Despite this, the Court is reluctant to dismiss Plaintiff's Whistleblower Law claim at this juncture. The fact that Plaintiff's employment was terminated by Defendant on October 25, 2015 does not conclusively establish that Plaintiff knew then or should have known then that his complaints regarding the staffing issues at the Merli Veterans' Center were the reasons, in part or in whole, for his discharge. *See Clark v. Colwyn Borough*, Civil Action No. 12-3668, 2013 WL 504865, at *4 (E.D. Pa. Feb. 13, 2013) (applying "discovery rule" tolling principle to Whistleblower Law action and denying motion to dismiss when question remained open about when plaintiff learned of his employment termination). Indeed, Plaintiff's employment termination letter from Defendant that is attached to the Complaint says nothing about the reasons for his firing. (*See* Doc. 2-1).

Thus, the Court will deny Defendant's motion to dismiss Plaintiff's Whistleblower Law claim. During discovery Defendant is free to inquire into the facts surrounding when Plaintiff learned his staffing-related complaints were allegedly the reason or one of the reasons for his discharge.

## V. CONCLUSION

For the reasons outlined above, the Court will grant Defendant's Motion in part and deny it in part. Counts II and IV are dismissed with prejudice. The dismissal of Counts I and III, however, will be without prejudice to Plaintiff's right to amend his Complaint as it pertains to those claims. A separate order follows.

_____
Robert D. Mariani
United States District Judge