IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL SEMIAN<br><br>Plaintiff,<br>v.<br><br>DEPARTMENT OF MILITARY AND VETERANS' AFFAIRS-GINO J. MERLI VETERANS' CENTER<br><br>Defendant. | JURY TRIAL DEMANDED<br><br>NO: 3:17-CV-1183<br><br>HONORABLE<br>ROBERT D. MARIANI |

## PLAINTIFF MICHAEL SEMIAN'S TRIAL BRIEF

***NOW COMES*** Plaintiff, Michael Semian, by and through counsel, Harry T. Coleman, Esquire, Walter F. Casper, Jr., Esquire and Owen M. Coleman, Esquire, and hereby submits the instant Trial Brief pursuant to Local Rule 39.7 of the United States District Court for the Middle District of Pennsylvania, stating as follows:

## I.   Introduction

This matter is a wrongful termination claim advanced by Plaintiff Michael Semian, the former Commandant at the Gino Merli Veterans Center in Scranton, against the Department of Veterans and Military Affairs. Plaintiff's claim is grounded under Title VII and the Pennsylvania Human Relations Act and submits his sexual orientation was the motivating factor of Defendant in his termination.

## II.    The Title VII Claim

Discrimination on the basis of sexual orientation or transgender status is currently at the launching point as the United States Supreme Court is set to decide and is expedited to hold that Title VII does bar discrimination on the basis of sexual orientation.

Nearly twenty years ago, the Third Circuit found that Title VII does not bar discrimination on the basis of sexual orientation. *See Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 261 (3d Cir. 2001) 271 ("Title VII does not prohibit discrimination based on sexual orientation."). However, our society has moved well into the time were so called "non-traditional" relationships have been given legal recognition. As referenced above, in spring 2019, the United States Supreme Court granted certiorari to address whether Title VII bars discrimination against transgender people based on transgender status or sex stereotyping, *see R.G. & G.R. Harris Funeral Homes, Inc. v. EEOC*, No. 16-2424, and whether Title VII bars sexual orientation discrimination, see *Bostock v. Clayton County*, No. 17-13801, and *Altitude Express, Inc. v. Zarda*, No. 15-3775.

The case of *Bostock v. Clayton County, Georgia* is a pending case before the Supreme Court of the United States dealing with discrimination

of employees due to sexual orientation under Title VII of the Civil Rights Act of 1964. The case was consolidated with *Altitude Express Inc. v. Zarda*, a similar case of apparent discrimination due to sexual orientation, but which had created a split among the Circuit Courts.

Oral arguments were heard on October 8, 2019, with the *R.G. & G.R. Harris Funeral Homes Inc. v. Equal Employment Opportunity Commission*, a similar question of discrimination under the Civil Rights Act, relating to transgender persons.

The case background in the pending Supreme Court case indicates that Gerald Bostock was an employee of Clayton County, within the Atlanta area, as an official within its juvenile court since 2003. Bostock, like Michael Semian here,  had  good performance records through the years.

In early 2013, Bostock  joined a gay softball league and promoted it for volunteerism. In April 2013, Clayton County conducted an audit of funds controlled by Bostock and subsequently fired him for "conduct unbecoming a county employee." Bostock believed that the county used the claim of misspent funds as a pretense for firing him for being gay, and sought legal recourse for workplace discrimination in 2016 filing suit  the United States District Court for the Northern District of Georgia.

The County file a Motion to Dismiss Bostock's claim, which the District Court judge granted, holding Title VII of the Civil Rights Act does not include protection against discrimination towards sexual orientation, using the precedence of the 2017 case *Evans v. Georgia Regional Hospital* decided by the Eleventh Circuit. Bostock appealed to the Eleventh Circuit Court of Appeals where the three-judge panel affirmed the District Court's ruling in 2018. The Eleventh Circuit Court relied on two prior cases: its previous ruling in *Evans*, and *Blum v. Gulf Oil Corp.* from the Fifth Circuit in 1976.

In upholding the ruling, the Eleventh Circuit pointed to their ruling in *Evans* that dismissed the Supreme Court's precedent against sex discrimination set by *Price Waterhouse v. Hopkins* (1989), related to expectations of stereotypical gender behavior, and *Oncale v. Sundowner Offshore Services, Inc.* (1998), related to same-sex harassment.

Bostock petitioned the United States Supreme Court for writ of certiorari on the question of whether sexual orientation is covered by Title VII of the Civil Rights Act.

The Supreme Court certified the petition in April 2019, consolidated with that of *Zarda v. Altitude Express, Inc.*, a similar case of discrimination

based on sexual orientation out of the Second Circuit, but which had affirmed that Title VII covered sexual orientation discrimination.

Between the above referenced cases, as well as prior Circuit court decisions, there had been a split opinion on whether sexual orientation discrimination is covered by Title VII.

Oral arguments in the consolidated cases were heard on October 8, 2019, alongside arguments for *R.G. & G.R. Harris Funeral Homes Inc. v. Equal Employment Opportunity Commission*, a Sixth Circuit case related to Title VII protections for transgendered individuals.

It has been reported that at oral arguments, arguments centered on how the word "sex" in Title VII could be interpreted to include sexual orientation, and not strictly gender ( *Higgens, Tucker (October 8, 2019). "Supreme Court clashes over meaning of 'sex' in LGBT discrimination cases". CNBC.)*

In fact, after the long outdated Third Circuit Opinion in *Bibby,* the EEOC published opinions (in cases involving federal-government employment) recognizing sexual-orientation and gender-identity claims as actionable under Title VII. *See Macy v. Holder*, 274 EEOC Appeal No. 0120120821, 2012 WL 1435995, at *4 (EEOC Apr. 20, 2012) ("clarif[ying

that claims of discrimination based on transgender status, also referred to as claims of discrimination based on gender identity, are cognizable under Title VII's sex discrimination prohibition, and may therefore be processed under Part 1614 of EEOC's federal sector EEO complaints process"); *Baldwin v. Foxx*, EEOC Appeal No. 0120133080, 2015 WL 4397641, at 279 *10 (EEOC July 15, 2015) (holding "that Complainant's allegations of discrimination on the basis of his sexual orientation state a claim of discrimination on the basis of sex within the meaning of Title VII"). Since then there have been a number of developments in agency positions and in case law.

United States District Courts within Pennsylvania have reached different conclusions on whether sexual orientation is a protected class under Title VII of the Civil Rights Act of 1964 ("Title VII"). On June 2, 2017, in *Coleman v. Amerihealth Caritas*, No. 16-3652, 2017 U.S. Dist. (E.D. Pa.2017), the United States District Court for the Eastern District of Pennsylvania ruled that sexual orientation is not a protected class under Title VII.

A few months prior, on November 4, 2016, the United States District Court for the Western District of Pennsylvania, reached a different result in *United States EEOC v. Scott Med. Health Ctr., P.C.*, 217 F. Supp. 3d

834 (W.D. Pa. 2016). There, the District Court for the Western District found that discrimination based on sexual orientation is unlawful under Title VII.

The facts in both cases are quite similar: a gay male employee alleged discrimination in the workplace due to his sexual orientation. The District Court for the Western District found that discrimination based on sexual orientation was synonymous with gender discrimination under Title VII. Discrimination against an employee, due to behavior deviating from gender and societal norms is unlawful under Title VII.

The District Court for the Eastern District arrived at a different conclusion, ruling that sexual orientation discrimination was not actionable under Title VII. In coming to its decision, the Eastern District relied on the Third Circuit's decision in *Bibby v. Phila. Coca Cola Bottling Co.*, 260 F.3d 257 (3d Cir. 2001). There, the Third Circuit found that sexual orientation discrimination is lawful under Title VII.

Most relevant to this matter is prophetic comments made by Eastern District in *Coleman* where the court said, in quoting *Bibby*:  "the nature of injustice is that we may not always see it in our times," hinting that the landscape and views of the nation are gradually shifting. It is quite obvious

that future appellate outcomes from the Third Circuit Court of Appeals or the anticipated decision from the United States Supreme Court may reflect differently.

Your Plaintiff Michael Semian understands quite well the fine line he must walk in this matter in light of outdated precedent. He is well prepared and ready to start that journey to redress a violation of his federally protected rights.

Other federal courts across the country are wisely and appropriately coming to results on this issue in line with e view of your Plaintiff herein, Michael Semian. For example, some appellant courts, such as the Seventh Circuit, have found that discrimination based on sexual orientation is a underline form of sex discrimination. *Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339 (7th Cir. 2017).

However, If the evidence of discrimination is only circumstantial,  then the defendant can argue that there was no animus at all, and it is then incumbent for the plaintiff to show that the alleged non-discriminatory motive is a pretext, and accordingly Jury Instruction 5.1.2 should be given. *See generally Stackhouse v. Pennsylvania State Police*, 2006 WL 680871 at *4 (M.D.Pa. 53 2006) ("A pretext theory of discrimination is typically

presented by way of circumstantial evidence, from which the finder of fact may infer the falsity of the employer's explanation to show bias. A mixed-motive theory of discrimination, however, is usually put forth by presenting evidence of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude.") (internal citations and quotations omitted).

The Plaintiff requests Standard Third Circuit Jury Instruction 5.1.2 (Proposed Jury Charge 12) which reads as follows:

> In this case Michael Semian is alleging that he was terminated from employment due to his sexual orientation as a gay male. In order for Mr. Semian to recover on this discrimination claim against defendant, Mr. Semian must prove that the Department of Military and Veterans Affairs intentionally discriminated against him. This means that Mr. Semian must prove that his sexual orientation was a determinative factor in defendant's decision to terminate plaintiff.
>
> To prevail on this claim, Mr. Semian must prove both of the following by a preponderance of the evidence:
>
> First:   Defendant terminated Michael Semian's employment; and

Second:     Mr. Semian's sexual orientation was a determinative
            factor in defendant's decision.

Although plaintiff must prove that defendant acted with the
intent to discriminate, Mr. Semian is not required to prove that
defendant acted with the particular intent to violate plaintiff's
federal civil rights.

 Moreover, plaintiff is not required to produce direct evidence of
intent, such as statements admitting discrimination. Intentional
discrimination may be inferred from the existence of other facts.
For example, you have been shown statistics in this case.
Statistics are one form of evidence that you may consider when
deciding whether a defendant intentionally discriminated
against a plaintiff. You should evaluate statistical evidence
along with all the other evidence received in the case in
deciding whether defendant intentionally discriminated against
Mr. Semian.

Defendant] has given a nondiscriminatory reason for its action
to terminate Plaintiff.  If you disbelieve defendant's explanation
for its conduct, then you may, but need not, find that Mr.
Semian has proved intentional discrimination. In determining
whether defendant's stated reason for its actions was a pretext,

or excuse, for discrimination, you may not question defendant's business judgment. You cannot find intentional discrimination simply because you disagree with the business judgment of defendant or believe it was harsh or unreasonable. You are not to consider defendant's wisdom or lack thereof. However, you may consider whether defendant's reason is merely a cover-up for discrimination.

Ultimately, you must decide whether plaintiff Michael Semian has proven that his sexual orientation was a determinative factor in defendant's employment decision. "Determinative factor" means that if not for plaintiff's sexual orientation, his termination would not have occurred.

(See Doc 79,  Instruction 12)

## The McDonnell Douglas Burden-Shifting Test

Plaintiff requests the Court charge the jury on the complex burden-shifting formula established for pretext cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

Under the *McDonnell Douglas* formula, a plaintiff who proves a prima facie case of discriminatory treatment raises a presumption of intentional

discrimination. The defendant then has the burden of production, not persuasion, to rebut the presumption of discrimination by articulating a nondiscriminatory reason for its actions. If the defendant does articulate a nondiscriminatory reason, the plaintiff must prove intentional discrimination by demonstrating that the defendant's proffered reason was a pretext, hiding the real discriminatory motive.

In a Title VII case, plaintiff Michael Semian may demonstrate discrimination by merely establishing a factual record that supports an allegation that such discrimination was "a motivating factor" for an employment-related action, not necessarily the only factor. See *Desert Palace*, 539 U.S. at 92-94 (quoting 42 U.S.C. § 2000e-2(m)) ("[e]xcept as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.") (emphasis added).

Under *McDonnell Douglas*, the complainant must initially show a prima facie case of discrimination by establishing: (i) that he belongs to a protected class; (ii) that he was qualified for a job for which he held; (iii) that despite his qualifications, he was terminated; and (iv) that, after his

termination…. unlawful practice for an employer ... to fail to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.  And, under §2000e-2(m), an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment decision here. *Young v. UPS*, 135 S. Ct. 1338, 1345, 191 L. Ed. 2d 279, 288-289 (2015*); McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *Scheidemantle v. Slippery Rock University*, 470 F.3d 535, 539 (3d Cir. 2006).

Once a prima facie case is shown, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *McDonnell Douglas, supra*. "If the employer meets this burden, the presumption of intentional discrimination disappears but the plaintiff can still prove disparate treatment by offering evidence that the employer's explanation is pretextual." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49, n.3, 124 S. Ct. 513, 517-518, n.3, 157 L. Ed.2d 357 (2003)(quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed.2d 105 (2000)).

In proving pretext and to survive a Rule 50 Motion, the plaintiff must demonstrate "that the employer's articulated reason was not merely wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Lapaz v. Barnabas Health System*, No. 15-1773, 2015 U.S. App. LEXIS 21816, 634 Fed. Appx. 367, 370 (3d Cir. Dec. 16, 2015)(quoting *Jones v. School District of Philadelphia*, 198 F.3d 403, 413 (3d Cir. 1999)). "One approach is to point to evidence 'that the employer treated other, similarly situated persons not of his protected class more favorably.'" Id,(quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)). Another way to show evidence of disparate treatment is to "show that a comparator was similarly situated to the plaintiff 'in all relevant respects.'" Id,(quoting *Keystone Redev. Partners LLC v. Decker*, 631 F.3d 89, 109 (3d Cir. 2011)).

## ADVISORY JURY REQUESTED ON FRONT AND BACK PAY

Plaintiff Michael Semian recognizes he has no right to a jury trial for back pay and front pay.

Back pay and front pay are equitable remedies that are to be distinguished from the compensatory damages to be determined by the jury under Title VII. See the Comments to Third Circuit  Civil Instructions 5.4.3 & 5.4.4.

Compensatory damages may include lost future earnings over and above the front pay award. For example, the plaintiff may recover the diminution in expected earnings in all future jobs due to reputational or other injuries, above any front pay award. The court in *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 953-54 (7th 98 Cir. 1998), described the difference between the equitable remedy of front pay and compensatory damages for loss of future earnings in the following passage: "Front pay in this case compensated Williams for the immediate effects of Pharmacia's unlawful termination of her employment. The front pay award approximated the benefit Williams would have received had she been able to return to her old job. The district court appropriately limited the duration of Plaintiff's front pay award to one year because she would have lost her position by that time in any event because of the merger with Upjohn. The lost future earnings award, in contrast, compensates Williams for a lifetime of diminished earnings resulting from the reputational harms she suffered as a result of Pharmacia's discrimination. Even if reinstatement had been feasible in this case, Williams would still have been entitled to compensation for her lost future earnings. As the district court explained: "reinstatement (and therefore front pay) . . . does not and cannot erase that the victim of discrimination has been terminated by an employer, has sued

15

that employer for discrimination, and the subsequent decrease in the
employee's attractiveness to other employers into the future, leading to
further loss in time or level of  experience. Reinstatement does not revise
an employee's resume or erase all forward-looking aspects of the injury
caused by the discriminatory conduct."

A reinstated employee whose reputation and future prospects have
been damaged may be effectively locked in to his or her current employer.
Such an employee cannot change jobs readily to pursue higher wages and
is more likely to remain unemployed if  the current employer goes out of
business or subsequently terminates the employee for legitimate reasons.
These effects of discrimination diminish the employee's lifetime expected
earnings. Even if Williams had been able to return to her old job, the jury
could find that Williams suffered injury to her future earning capacity even
during her period of reinstatement. Thus, there is no overlap between the
lost future earnings award and the front pay award. The *Williams* court
emphasized the importance of distinguishing front pay from lost future
earnings, in order to avoid double-counting. [T]he calculation of front pay
differs significantly from the calculation of lost future earnings. Whereas
front pay compensates the plaintiff for the lost earnings from her old job for
as long as she may have been expected to hold it, a lost future earnings

award compensates the plaintiff for the diminution in expected earnings in all of her future jobs for as long as the reputational or other injury may be expected to affect her prospects. . . . [W]e caution lower courts to take care to separate the equitable remedy of front pay from the compensatory remedy of lost future earnings. . . . Properly understood, the two types of damages compensate for different injuries and require the court to make different kinds of calculations and factual findings. District courts should be vigilant to ensure that their damage inquiries are appropriately cabined to protect against confusion and potential overcompensation of plaintiffs.

The Third Circuit pattern instruction contains bracketed material that would instruct the jury not to award back pay or front pay. As requested by the Plaintiff here, the jury may, however, enter an award of back pay and front pay as advisory, or by consent of the parties. In those circumstances, the court should refer to Third Circuit instructions  5.4.3 for back pay and 5.4.4 for front pay.

In many cases it is commonplace for back pay issues to be submitted to the jury. The court is respectfully requested that the issue of front pay should be submitted to the jury on an advisory basis or left to the court's determination without reference to the jury.

17

## PHRA CLAIM

It is beyond argument that the Court of Appeals for the Third Circuit has directed district courts to maximize jury awards to plaintiffs. See *Gagliardo v. Connaught Lab., Inc.*, 311 F.3d 565, 570 – 71 (3d Cir. 2002). Specifically, the Court of Appeals held in Gagliardo that "a district court's obligation to uphold lawful jury awards whenever reasonable...supports the apportionment of damages between...state and federal claims." Gagliardo, 311 F.3d at 571 (citing Passantino v. Johnson & Johnson Consumer Prod., Inc., 212 F.3d 493, 510 (9th Cir. 2000)).

Plaintiff requests that his damages under Title VII and those under the PHRA  be submitted to the Jury.

Dated: <u>February 23, 2020</u>          LAW OFFICE OF HARRY T. COLEMAN

By:  <u>/s/ Harry T. Coleman</u>
Harry T. Coleman, Esquire
Attorney I.D. No. 49137
41 N. Main Street
3rd Floor, Suite 316
Carbondale, PA 18407
(570) 282-7440
(570) 282-7606 Fax
Harry@harrycolemanlaw.com
*Attorney for Plaintiff*

By: *Walter F. Casper*_____
    Walter F. Casper, Jr., Esquire
    35 South Church Street
    Carbondale, PA 18407
    (570) 282-6910
    Casperlaw@verizon.net

    *Attorneys for Plaintiff*